IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | CHAPTER 11 |
| METRO CREMO & SONS, INC., | * | (Involuntary Petition) |
| Debtor | * | |
| | * | |
| CHASE IMPORTS, LLC, MECHANICS | * | CASE NO. 1:08-bk-01798MDF |
| 2000, and GRIP ON TOOLS, | * | |
| Movants | * | |
| | * | |
| vs. | * | |
| | * | |
| METRO CREMO & SONS, INC., | * | |
| Respondent | * | |

## OPINION

Before me is the Motion to Dismiss the Involuntary Petition of Chase Imports, LLC ("Chase Imports"), Mechanics 2000 and Grip on Tools ("Petitioners") in which Petitioners commenced a chapter 11 case against Metro Cremo & Sons, Inc. ("Metro"). The sole matter for decision is whether the claims of Mechanics 2000 and Chase Imports are subject to a bona fide dispute as to amount, such that the Involuntary Petition should be dismissed for lack of subject matter jurisdiction and failure to state a claims upon which relief can be granted.

**Procedural and Factual History**

Metro was incorporated and organized under the laws of Pennsylvania on February 24, 1983. Its registered address is 333 Sunbury Street, Minersville, Pennsylvania. It was incorporated to engage in the business of the general merchandising of consumer products.[1]

---

[1] The Court takes judicial notice of the official records of the Commonwealth of Pennsylvania, Department of State, Corporations Bureau.

Metro operates "Cremo's Variety Outlet," a discount store, at 6499 Carlisle Pike, Mechanicsburg, Pennsylvania.

Petitioners filed the Involuntary Petition on May 19, 2008, alleging that they held non-contingent, liquidated, unsecured claims in the following amounts:

| | |
|---|---|
| Mechanics 2000 | $467,179.65 |
| Chase Imports | $142,697.82 |
| Grip on Tools | $136,798.91 |

Metro does not dispute the amount of the filed claim of Grip On Tools. It does, however, dispute the amount owed to the remaining two Petitioners, Mechanics 2000 and Chase Imports (the "Amash Companies"), which are wholly owned by Mike Amash. The parties agree that Metro has more than twelve creditors.

On July 31, 2008, Metro filed a Motion to Dismiss the Petition pursuant to Fed. R. Bankr. P. 1011(b). A hearing was held on September 4, 2008, at which time the Court heard testimony and took evidence regarding the nature of the claims and the alleged disputes as to amount. The matter is ready for decision.

## Discussion

Involuntary bankruptcy proceedings are governed by 11 U.S.C. §303, which provides in relevant part:

> (b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title -
>
> > (1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount . . . if such noncontingent, undisputed claims aggregate at least $13,475 more than the value of any

2

> lien on property of the debtor securing such claims held by the holders of such claims[.]

11 U.S.C. §303(b)(1) (footnotes omitted).

The sole issue for decision is whether the claims of Mechanics 2000 or Chase Imports are subject to a bona fide dispute. If the claim of either creditor is subject to a bona fide dispute, the Petition must be dismissed because the requisite number of qualified petitioners will be absent. The lack of the requisite number of petitioning creditors deprives the Court of subject matter jurisdiction. The Amash Companies aver that they hold claims in the aggregate amount of $609,877.57. Metro avers that it owes the Amash Companies only $535,786.62,[2] a difference of $74,090.95. Therefore, Metro alleges that the claims of the Amash Companies are disputed as to amount.

"Establishing the existence or absence of a bona fide dispute involves a shifting burden of proof." *In re Biogenetic Technologies, Inc.*, 248 B.R. 852, 856 (Bankr. M.D. Fla. 1999). "A 'petitioning creditor must establish a prima facie case that no bona fide dispute exists. Once this is done, the burden shifts to the debtor to present evidence demonstrating that a bona fide dispute does exist.'" *Id., quoting In re Rimell,* 946 F.2d 1363, 1365 (8th Cir.1991).

The term "bona fide dispute" is not defined in the Bankruptcy Code. By its nature however, an inquiry into the legitimacy of a dispute is necessarily an examination of the merits, but not a resolution on the merits. *In re Lough*, 57 B.R. 993, 997 (Bankr. E.D. Va. 1986). *Lough* held that the test for the existence of a bona fide dispute is whether "there is a genuine issue of material fact that bears upon the debtor's liability or a meritorious contention as to the

---

[2] Metro does not break down this figure into specific, separate amounts for Mechanics 2000 and Chase Imports.

application of law to undisputed fact." *In re Lough*, 57 B.R. at 997. This test was adopted by the Third Circuit in *B.D.W. Assoc. v. Busy Beaver Bldg. Ctrs.*, 865 F.2d 65 (3d Cir. 1989), *See also IBM Credit Corp. v. Compuhouse Systems, Inc.*, 179 B.R. 474 (Bankr. W.D. Pa. 1995). Whether there is a bona fide dispute must be decided using an objective standard. *Efron v. Gutierrez*, 226 B.R. 305, 313 (D. Puerto Rico, 1998). "[N]either the debtor's subjective intent nor his subjective belief is sufficient to meet this burden." *IBM Credit Corp,* 179 B.R. at 478 *quoting Matter of Sims*, 994 F.2d 210, 221 (5th Cir. 1993).

Before a party may be forced into bankruptcy, the court must find that an involuntary petition is not being used as a tool by a creditor to obtain an advantage over a debtor who legitimately disputes a debt. Prior to the 1984 amendments to the Bankruptcy Code, it was a common practice of bankruptcy courts to grant relief to petitioning creditors if a debtor was not paying debts as they became due, regardless of whether the debtor had a legitimate reason not to pay the debt. The requirement that the petitioning creditor hold a claim not subject to a bona fide dispute was enacted to rectify this abuse. *See* 30 Cong. Rec. S7618 (June 19, 1984)(comments of Senator Baucus) *cited in In re Henry*, 52 B.R. 8, 9-10 (Bankr. S.D. Ohio 1985).

As proof of its claim, Petitioners introduced into evidence the invoices and billing and payment records of Chase Imports and Mechanics 2000. The records started with the date on which each company's records recorded that Metro had no outstanding balance due. Chase Import's records showed no balance due as of July 24, 2007. However, according to the records of Mechanics 2000, Metro has had an outstanding balance due since August 17, 2003. The business records introduced into evidence by the Amash Companies included ledger balances, invoices and proof of delivery, and a copy of a check or check stub for every payment. Metro did

4

Case 1:08-bk-01798-MDF    Doc 40    Filed 09/29/08    Entered 09/30/08 10:21:35    Desc
Main Document      Page 4 of 8

not dispute the authenticity of the records, and they were duly admitted into evidence. The records listed the invoices that were issued and whether they had been paid. Metro did not allege that it did not receive any of the products invoiced, but it questioned whether it had been billed twice for goods shipped on two occasions. This matter was clarified by Amash's testimony that the goods initially were shipped with a Mechanics 2000 invoice[3] that was charged but then immediately credited, and then later billed through Chase Imports. Metro failed to establish that there was duplicate billing or that it was not properly credited for any payments made. The introduction of the records of the Amash Companies and the testimony of Mike Amash established the requisite prima facie case and shifted the burden of proof to Metro to prove the existence of a dispute.

      To meet this burden, Metro introduced several excerpts from its business records. Metro introduced a "Vendor Balance Detail" report that included items billed and amounts paid to Chase Imports starting October 25, 2006, when Metro's records showed that it had no outstanding balance due. This report included identical information for Mechanics 2000, except that the date on which it showed no balance due was March 2, 2006. Metro also introduced several invoices for Mechanics 2000 and Chase Imports and a series of e-mails between the parties between May 8 and June 10, 2008. Although Metro's "Vendor Balance Detail" has a different start date than the records for Chase Imports, they both included the same invoice amounts. Ironically, Chase Imports credits Metro with more payments toward the outstanding

---

[3]Amash explained that the Mechanics 2000 "invoices" were intended to serve as packing lists and not intended to serve as a demand for payment. The demand for payment was later made through Chase Imports invoices.

5

Case 1:08-bk-01798-MDF    Doc 40    Filed 09/29/08    Entered 09/30/08 10:21:35    Desc
                          Main Document       Page 5 of 8

balance than Metro includes in its records.[4] When the records of Mechanics 2000 are compared with Metro's records of bills received and paid the picture is quite different. As of March 2, 2006, the date upon which Metro asserts that it had no outstanding balance due to Mechanics 2000, the records of Mechanics 2000 show an outstanding balance of $491,369.75. However, Metro neither affirmatively represented nor introduced evidence that the open invoices on the books of Mechanics 2000 as of March 2, 2006 had been paid.

One of Metro's officers, Paul Cremo, testified that he had been informed by his brother Eric Cremo, the company's chief financial officer, that the amount the Amash Companies was claiming was incorrect. The witness, however, was unable to identify the reason for the discrepancy. In fact, although the witness was able to authenticate the documents, he appeared unfamiliar with their contents. Testimony regarding the record entitled "Customer Balance Detail" for Mechanics 2000 is illustrative of this point. Metro's witness testified that there were twelve $9,000.00 payments attributable to Invoice # 103182. But even a cursory examination of the record reveals that the three payments listed on the first page of the document[5] are duplicated on the second page.[6] The far left column of the "Customer Balance Detail" record stated that there was a negative balance of $2,772,721.28, which the witness candidly admitted he did not

---

[4]Neither Metro or the Amash Companies consistently separated the obligations of Mechanics 2000 and Chase Imports and often treated the obligations as if the Amash Companies were one entity.

[5]This two-page document obviously was cobbled together from a longer document and was arranged in a confusing manner. The title of the document was listed on the second rather than the first page. Check numbers 29411, 29413 and 29414, all in the amount of $9,000.00, were listed on the bottom of the first page and repeated again at the top of the second page.

[6]All nine payments were credited in the business records of Mechanics 2000.

understand and which he characterized as "kinda crazy." Metro's unsupported representation, lacking specific information identifying the invoices in dispute or the basis of the dispute (e.g., undelivered goods, damaged goods, inaccurate arithmetic), was not sufficient to carry its burden.

In *In re Systems Communications, Inc.*, 234 B.R. 143, 144 (Bankr. M.D. Fla. 1999), the court rejected proof offered by an alleged debtor in an involuntary case similar to the instant one showing that the alleged debt to the petitioning creditor had been previously paid. The Court reasoned, "[a] debtor's book and record entries, presented alone, cannot be binding on a [petitioning] creditor. To hold otherwise would mean that if a debtor keeps no books and records it does not have any obligations, a proposition absurd on its face."

In the instant case, Metro introduced copies of its records, which provided a balance due different from that advanced by the Amash Companies in the Petition. However, Metro did not produce objective proof of the nature of the dispute. Metro's rebuttal rested on a bald assertion that its records demonstrated a different amount due and on business records that failed to adequately support a bona fide dispute.[7] Accordingly, under the above-discussed standard, Metro did not carry its burden to show that there is a genuine issue as to a material fact that bears upon the its liability or a meritorious contention as to the application of law to undisputed facts.[8]

---

[7]The Court also found curious that the witness Metro offered was not its financial officer or accountant, but an officer primarily responsible for operations. Further, Metro offered in evidence correspondence between Amash and Metro presumably for the purpose of demonstrating that Amash had improperly attempted to trap Metro into admitting that the amount of the debt was undisputed so that Amash could establish the Amash Companies' entitlement to seek involuntary relief. While this may have been Amash's motivation, his actions are understandable considering that Metro had not disputed the claims of the Amash Companies prior to the filing of the Involuntary Petition.

[8]Much of Metro's Brief on its motion to dismiss the Petition is devoted to the argument that a bona fide dispute as to *any amount* of a petitioner's claim in an involuntary bankruptcy

7

Without sufficient evidence that any of the claims at issue are the subject of a bona fide dispute, I must conclude that the Petitioning creditors in this case meet the criteria set forth in 11 U.S.C. § 303(b)(1). An appropriate Order will be entered.[9]

By the Court,

*Mary D. France*
Bankruptcy Judge

Date: September 29, 2008

*This document is electronically signed and filed on the same date.*

---

case renders that claim ineligible for consideration as one of the three claims required under BAPCPA section 303(b)(1), even if the undisputed portion of that claim exceeds the statutory amount. While I agree with Metro's interpretation of BAPCPA, this issue is not determinative because I find that Metro failed to rebut the evidence introduced by Petitioners that the claims were not subject to a bona fide.

[9]Having raised the issue of subject matter jurisdiction, Metro has not filed an answer to the Petition. Therefore, the Order issued in furtherance of this Opinion will set an answer and hearing date on the merits of the Involuntary Petition.

8